UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Ernest C.,[1]

                              Plaintiff,

    v.                                                3:24-CV-1486 (MJK)

Frank Bisignano,
Commissioner of Social Security

                              Defendant.
_____

Peter A. Gorton Esq., for Plaintiff
Vernon Norwood Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION & ORDER

Ernest C. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying his application for benefits. (Dkt. 1.). Ernest consented to the jurisdiction of a Magistrate Judge. (Dkt. 7). Both parties filed briefs (Dkts. 9, 15, 16) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] This Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial to protect his privacy.

1

I.   **PROCEDURAL HISTORY**

On May 25, 2022, Ernest filed an application for Title II disability insurance benefits, alleging disability beginning December 31, 2017. (T. 24).[2] The Social Security Administration denied the claim initially on October 18, 2022, and denied the claim again upon reconsideration on March 23, 2023. (*Id.*). Ernest requested a hearing seven days later. (*Id.*) The Administration granted the hearing and Administrative Law Judge ("ALJ") Mary Jane Pelton held the hearing on February 9, 2024. (T. 37-56). At the hearing, Attorney Dorollo Nixon represented Ernest. (T. 40). Both Ernest and Vocational Expert Linda Vause testified. (T. 43-51, 51-55). On March 8, 2024, the ALJ issued an unfavorable decision. (T. 21).

II.  **GENERALLY APPLICABLE LAW**

The parties are familiar with the five-step-sequential analysis ALJs use to evaluate disability insurance and supplemental security income claims, so the Court need not repeat it. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Petrie v. Astrue,* 412 F. App'x 401, 404 (2d Cir. 2011) (summary order). Likewise, the parties are both familiar with

---

[2] All page references are to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

the substantial evidence standard: Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

### III. FACTS

The record includes Ernest's medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims, as appropriate.

### IV. THE ALJ'S DECISION

At step one the five-step-sequential analysis, the ALJ determined that Ernest has "not engage in substantial gainful activity since May 25, 2022, the application date." (T. 26) (cleaned up).

At step two, ALJ Pelton held that Ernest "had the following severe impairments: degenerative disc disease of the spine and peripheral neuropathy." (*Id.*). ALJ Pelton also determined that Ernest's plantar fasciitis, hypertension, and migraines are not severe impairments. (T. 27).

At step three, the ALJ determined that Ernest "does not have an impairment or combination of impairments that meets or medically

3

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*) (cleaned up).

Next, ALJ Pelton determined that Ernest had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except he can never climb ladders/ropes/scaffolds; and he can only occasionally climb ramps/stairs, balance (as defined in the SCO), stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to wetness, fumes, odors, dusts, gases and poor ventilation. He should have no exposure to hazards such as unprotected heights or dangerous moving machinery.

(T. 28).

To make this finding, ALJ Pelton "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (T. 28). ALJ Pelton "also considered the medical opinions(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. 416.920(c). (T. 28).

At step four, ALJ Pelton reasoned that Ernest had no past relevant work and is classified as a younger individual, age 18-49. (T. 30). ALJ Pelton also reasoned that "transferability of skills is not material to the determination of disability." (T. 31) (cleaned up).

4

At step five, ALJ Pelton reasoned that "considering" Ernest's "age, education, work experience and residual functional capacity," Ernest "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (T. 32). Accordingly, ALJ Pelton held that Ernest is not disabled as defined by the Social Security Act. (*Id.*).

## V.   ISSUES IN CONTENTION

Ernest argues that this Court should reverse the ALJ's decision because ALJ Pelton did not properly perform the supportability and consistency analyses on any medical opinions. (Pl. Br. at 5-16). Within this argument, Ernest argues "new evidence" submitted by Owalis Gul, M.D., "demonstrates the ALJ's decision is not supported by substantial evidence." (Pl. Br. at 6). Ernest also argues that ALJ Pelton's decision should be reversed because she failed to find that he needs a sit/stand option. (Pl. Br. at 16). In opposition, the Commissioner argues that ALJ Pelton's decision should be affirmed because substantial evidence supports the decision. (Def. Br. at 7-16).

## VI. DISCUSSION

The Court holds that ALJ Pelton's decision should be reversed and remanded. For courts to reverse an ALJ's decision based on newly submitted evidence, the evidence must be new, material, and relevant to the time period. Here, Dr. Gul's 2024 medical opinion—which ALJ Pelton did not have when she crafted Ernest's RFC—is new, relevant to the time period, and material because it shows Ernest's deteriorating condition. That new evidence should have changed the ALJ's analysis. And because it should have, the Court must reverse the ALJ's decision.

"New evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (cleaned up). The newly submitted evidence "must be new and material" and "it must relate to the period on or before the ALJ's decision." *Id.* Claimants must also show that the evidence "would have influenced the Commissioner to decide" the "claimant's application differently." *Patrick M. v. Saul*, No. 3:18-CV-290 (ATB), 2019 WL 4071780 at *6 (N.D.N.Y. Aug. 28, 2019). "Remand is not required if the excluded evidence was essentially

duplicative of evidence considered by the ALJ." *Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *4 (2d Cir. Nov. 7, 2024).

Because no party argues that the information is old or irrelevant, the question is whether the new evidence would have influenced the Commissioner's decision. The answer is yes because the record shows that Ernest's condition deteriorated over time.

On September 17, 2022, Rita Figueroa, M.D., consultatively examined Ernest. (T. 315-18). During the exam, Dr. Figueroa found that Ernest had an abnormal gait, "difficulty walking as it hurts his heels," he could "walk on" his heels and toes with "difficulty" and when he walked on his heels and toes, he reported heel pain. (T. 316). Dr. Figueroa also found that Ernest could only squat halfway. (*Id.*). Finally, among other things, Ernest had full range of motion in his hips, but he had discomfort with movement. (T. 317). All in all, Dr. Figueroa opined that Ernest had moderate limitations on his ability to walk, stand, kneel, squat, crawl, bend, lift, and carry. (T. 318). Next, on October 13, 2022, A. Vinluan, M.D., reviewed Ernest's medical records and crafted a medical source statement that was identical to Dr. Figueroa's. (T. 59). Finally, on March 7, 2023, A. Saeed, M.D., reconsidered Ernest's

7

application, reviewed his medical records, and crafted a medical source statement identical to Drs. Figueroa and Saeed. (T. 74).

On January 19, 2024, Matthew Swanson, D.P.M., a doctor who has treated Ernest since 2022, submitted a checkbox form on his behalf. (T. 420-22; 423). Dr. Swanson noted, among other things, "Ernest is unable to ambulate for extended periods due to immense pain in his feet." (T. 421). Continuing, Dr. Swanson noted that Ernest reported "9-10/10 sharp pain on the area of callus/hyperkeratotic tissue" and "a dull achy pain from his bunions." (T. 422). With this information and more, Dr. Swanson completed a checkbox form that said Ernest would be off task more than 20% but less than 33% of the day because of his pain. (T. 420).

Nearly five months later, on June 12, 2024, Dr. Gul, a doctor who has treated Ernest since February 2023, submitted a checkbox form on Ernest's behalf. (T. 9-12; 365). In his form, Dr. Gul noted that, among other things, Ernest "is suffering from severe back pain" and "sciatic pain radiating to" his "lower extremities." (T. 10). Similarly, in his May 9, 2024 checkbox form, Dr. Gul noted that Ernest is "unable to ambulate for extended" periods and "he has debilitating pain in his

back" and "both lower extremities." (T. 14). Ultimately, Dr. Gul's opined that Ernest would be off task more than 33% of the day because of his pain. (T. 9).

Analyzing these medical records together paints a vivid picture: Ernest's condition deteriorated over time. In April 2022, Ernest reported improvement in the pain. (T. 374). But in September 2022, when he was analyzed by Dr. Figueroa, Ernest's gait was abnormal, he had difficulty walking, and he had discomfort in his hips. (T. 316-17). About two months later, Ernest's foot pain was a 4/10 and his back pain was 3/10. (T. 369). In December 2022, Ernest reported significantly less pain. (T. 336). But by June 2023, Ernest reported "constant 8/10" pain that shoots up from his leg to his hip. (T. 365). Ernest's reporting of pain and Dr. Gul's June 2023 evaluation allowed Dr. Gul to opine that Ernest has a "disability and inability to walk," and he cannot "stand for … more than 5 minutes due to disabling pain in his bilateral lower extremities." (T. 366). Dr. Gul also noted "severe debilitating pain and restricted range of motion of" Ernest's "lower back and lower extremities." (T. 363). Similarly, in February 2024, Ernest testified that he can only walk or stand for 10 minutes before pain requires him to sit

or lay down, and he needs to sit or lay down for 5 to 10 minutes before he can stand or walk for another 10 minutes. (T. 46). He also testified that he has "to sit a certain way to keep" his "back from getting triggered." (T. 48).

    The deterioration of Ernest's condition is in line with his post-2022-medical records. In July 2023, Cori Pane F.N.P., noted that "mild to moderate multilevel degenerative changes are present." (T. 353). Three months later, N.P. Pane noted Ernest "is declining at this time" and "in terms of" his "radicular pain and likely underlying peripheral neuropathy," Ernest "has maximized medication options." (T. 344). And as previously noted, in January 2024, Dr. Swanson opined that Ernest is unable to ambulate for extended periods due to immense pain in his feet," and Ernest reported "9-10/10 sharp pain on the area of callus/hyperkeratotic tissue" and "a dull achy pain from his bunions." (T. 421-22). Consistent with Dr. Swanson's opinion, in May 2024, Dr. Gul opined that Ernest is "unable to ambulate for extended" periods and "he has debilitating pain in his back" and "both lower extremities." (T. 14).

None of the records the ALJ found persuasive captures Ernest's deterioration. For starters, ALJ Pelton found Drs. Figueroa, Vinluan, and Saeed's opinion persuasive. But those assessments are stale. *See Edwards v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-4345, 2023 WL 6173526 at *16 (S.D.N.Y. Sept. 22, 2023) ("a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated."). So, the persuasive value of those assessments is nil. But even if those opinions are not stale, the three doctors found moderate limitations *without* medical opinions from two treating doctors that identified Ernest's deteriorating condition. *See, e.g.,* (T. 422) (In January 2024, Ernest reported 9-10/10 pain); (T. 361) (In November 2023, Ernest reported 8/10 pain); (T. 374) (In April 2022, Ernest reported 3/10 pain). So, without a year's worth of updated information, those three opinions have little to no utility.

If ALJ Pelton had Dr. Gul's findings, the outcome should have been different. ALJ Pelton's decision does not tackle Ernest's deteriorating condition. In other words, ALJ Pelton missed the movie's climax, and in this movie, the climax was Dr. Gul's opinion. That opinion puts an exclamation point on Ernest's year worth of increasing

11

pain and deteriorating condition. And without that, the ALJ was forced to perform the supportability and consistency analyses with stale, or little useful, medical evidence. To put a finer point on it, ALJ Pelton's decision analyzed evidence that did not a tell the whole story. So, substantial evidence does not support the ALJ's decision.

When ALJs fail to consider missing records from a treating provider, they err as to the supportability, consistency, and a relationship factors. When new evidence is submitted to the Appeals Council *and* it undermines that ALJ's analysis, courts must reverse and remand the ALJ's decision. *See Brown v. Apfel,* 174 F.3d 59, 65 (2d Cir. 1999) (Reversing and remanding the ALJ's decision because the new evidence submitted to the "Social Security Appeals Council . . . undermines the ALJ's analysis."). This proposition is not limited to the abrogated treating physician rule because the *Lesterhuis* Court applied that rule. The proposition that missing records can undermine an ALJ's decision must extend to the current regulations. *See, e.g., Wickham v. Comm'r of Soc. Sec.*, No. 24-2045, 2025 WL 1419338 (2d Cir. May 16, 2025) (summary order) (Applying *Lesterhuis*). And, if courts could treat missing records from a treating provider as only a relationship with the

claimant factor error, they would be functionally overruling *Lesterhuis* and its line of cases.

To be clear, the Court is not claiming that any missing records from a treating physician would require reversal of the ALJ's decision. The Court only identifies that missing records in this case, under the current regulations, creates supportability, consistency, and relationship with the provider factors errors, not simply a relationship with a claimant factor error. Supportability and consistency analysis are "the foundation of the treating source rule." *Mary M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1594 (TWD), 2022 WL 823850 at *3 (N.D.N.Y. Mar. 17, 2022). But the relationship with the claimant factor is also a building block of the treating physician rule the current regulations include. *See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01* (Acknowledging that the SSA will "continue to consider a medical source's longstanding treatment relationship with the individual"). So, when a record from a treating physician is missing, and it changes the complexion of the record in a way that undermines the ALJ's decision, like here, courts should reverse the ALJ's decision because the supportability and consistency analyses were not properly

13

performed, and the court cannot tell how the ALJ considered the provider's relationship with the claimant. *See Brown*, 174 F.3d at 65.

Dr. Gul's 2024 medical opinion evidence was also not duplicative. The ALJ did not analyze Dr. Gul's medical progress report. And the Commissioner argues that ALJ Pelton's failure was proper because disability determinations are made by ALJs, "thus the ALJ had no duty to evaluate the persuasiveness of Dr. Gul's statements." (Def. Br. at 13) (cleaned up). Read another way, the ALJ did not need to perform the supportability and consistency analyses because there was no medical source statement from Dr. Gul. But now there is. Dr. Gul's checkbox form synthesizes Ernest's treatment, condition, and provides an opinion that the ALJ needs to perform the supportability and consistency analyses on. As a result, the newly submitted evidence is not duplicative of anything in the record or anything the ALJ already considered.

With that said, the Court turns to the Commissioner's arguments, which do not carry the day. First, the Commissioner argues that the Appeals Council rejected Ernest's appeal with Dr. Gul's 2024 medical opinion because Ernest "did not show a reasonable probability that" Dr.

14

Gul's 2024 medical assessment "would change the outcome of the decision." (Def. Br. at 15) (citing T. 2). But "when the Appeals Council denies review of the ALJ's decision" *Courts* "review the entire administrative record, which includes the new evidence, and" determines "whether there is substantial evidence to support" the ALJ's decision. *Lesterhuis*, 805 F.3d at 87. Here, there is not. As discussed above, the ALJ failed to analyze Ernest's deteriorating condition, a trend borne out in the medical records. As a result, substantial evidence does not support the ALJ's decision.

    The Commissioner's second argument, that Ernest's conservative treatment undermines his claim, falls flat. "Conservate treatment may weigh against a disability finding." *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (summary order). But ALJs "may not impose their respective notions that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (cleaned up). Here, when ALJ Pelton asked what issues Ernest has with his medicine, he told her that his medicine causes rectal bleeding, and medical records support his testimony. (T. 48-49; 414). Still, Ernest has "has

15

maximized" his "medication options." (T. 344). Ernest has also reported that he does not want surgery because "he is afraid." (T. 322). Taken together, Ernest's treatment decisions are not conservative enough to support the ALJ's decision.

Finally, the error was not harmless. "Although remand may be appropriate in many circumstances when the ALJ commits a procedural error, procedural error alone does not require remand as a matter of law." *Jason A.L. v. Comm'r Soc. Sec.*, No. 21-cv-477, 2022 WL 4354363, at *3 (N.D.N.Y. Sept. 20, 2022). Here, ALJ Pelton could not properly analyze the entirety of Ernest's medical history because his records were not before her. This impeded her ability to see the full scope of Ernest's deteriorating condition. In other words, the error harmed ALJ Pelton's analysis of Ernest's claim. As a result, the error was not harmless.

## VII   CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. 9) be **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. 15) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated: August 28, 2025

_____
Hon. Mitchell J. Katz
U.S Magistrate Judge